ROBERT E. JENKINS, as Assignee for the Benefit of the Creditors of the CONSOLIDATED ICE MACHINE COMPANY, and GEORGE A. WEISS MALTING AND ELEVATOR COMPANY, Suing on their Own Behalf and on Behalf of All Other Creditors of JOSEPH KUNTZ, Similarly Situated, who may Contribute to the Costs and Expenses of this Action, Respondents, *v.* MORITZ HAMMERSCHLAG and Others, Appellants, Impleaded with FREDERICK J. SHALEK.

*Trustees holding stock for creditors — what arrangement by which they purchase the stock is a violation of the trust — by whom an action to enforce an accounting may be brought — how such a trustee may resign the trust — powers which should be given to a receiver — plea of laches by dishonest trustees.*

Parties who have acquired the stock of a brewing company and hold the same in trust as the representatives of the creditors of an insolvent debtor, under an agreement that if certain payments are not made the stock shall be sold at auction and the proceeds of the sale shall be divided among the creditors *pro rata*, are guilty of a breach of trust where, by an arrangement between them, one of their number undertakes to resign at a meeting of the creditors, at which a majority of the claims being represented by the trustees who have purchased them at about twenty-five cents on the dollar, notice is given that the stock will be sold at public auction and the proceeds divided in accordance with the

FIRST DEPARTMENT, MARCH TERM, 1899.        [Vol. 38.

agreement under which the trustees were appointed, and where the trustees shortly afterwards advertise the stock for sale in an inconspicuous way (care being purposely taken to prevent prospective purchasers from acquiring any information as to its real value), and, at the sale, the stock is purchased by the trustee who attempted to resign, for the benefit of himself and his co-trustees for ten cents on the dollar, a price much below its market or true value, and insufficient to pay the claims of the creditors.

Such a resignation by a trustee is ineffective to discharge him as trustee or relieve him from the liability imposed upon him as such. The only manner in which he can legally resign and cease to be a trustee or terminate his liability as such is by procuring an order of the court or by the unanimous consent of all the creditors or other persons interested in the faithful execution of the trust.

In such a case an action is properly brought against the trustees by one creditor on behalf of himself and of other creditors similarly situated, for the purpose of securing a judgment declaring the sale of the stock to be null and void and requiring the defendants to account for their administration of the estate.

A receiver appointed under a judgment in favor of the plaintiff in such an action should not be permitted to sell the stock until after the defendants have accounted or a further order of the court has been made authorizing it; nor should the defendants be removed as trustees or the receiver be directed to make payments and be discharged from his receivership until after such trustees have rendered a full account of their acts and doings under the agreement appointing them.

It is only in extreme and exceptional cases that the defense of *laches* can be used as a shield to protect unfaithful or dishonest trustees.

APPEAL by the defendants, Moritz Hammerschlag and others, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 9th day of November, 1898, upon the decision of the court rendered after a trial at the New York Special Term.

*Edward J. McGuire*, for the appellants.

*Samuel Untermyer*, for the respondents.

McLAUGHLIN, J.:

In February, 1890, Joseph Kuntz caused "the Joseph Kuntz Brewing Company," to be organized under the laws of the State of New York, with a capital of $400,000, divided into shares of $100 each, and he then, although insolvent at the time, transferred to it, in consideration of 3,500 of such shares, his property, which consisted of a brewery and certain personal property used in connection with it. After he had made the transfer and received in

exchange the stock, he called a meeting of his unsecured creditors and made to them a proposition with reference to their extending the time of payment of their respective claims. His proposition was the acceptance by each creditor of two promissory notes made by him, one for one-half of the indebtedness, payable in one year with interest, and the other for the remaining one-half, payable in two years with interest. He also proposed, if his propositions were accepted, to deposit as collateral security for the payment of the notes with certain trustees to be selected by the creditors, 2,250 shares of the stock received by him from the corporation mentioned. The proposition was acceptable to the creditors present, and thereupon two agreements were prepared, both bearing date March 11, 1890, one between Kuntz and his creditors, which provided that the creditors should surrender their claims against him upon his delivering the notes and stock as he had proposed, and that the agreement should not be binding unless four-fifths of all the creditors in amount assented thereto. The other agreement was between Kuntz and the five persons selected by the creditors to hold the stock, and provided that Kuntz should turn over to such persons 2,250 shares of stock, which were to be held by them as collateral security for the payment of the notes, until all the creditors who might join in the agreement had been fully paid or their claims settled. This further agreement provided that, if such payments were not made within two years from that date, then the trustees should sell the stock at auction and divide the proceeds among the creditors *pro rata* according to their respective claims, and that in the meantime the trustees holding the stock had the right to vote upon it, subject to certain restrictions, as to mortgaging the property of the corporation and increasing the salaries of its officers, and that they also had the right to elect two members of the board of directors. The agreement with the creditors became operative by the necessary four-fifths agreeing to the terms and conditions of it, and thereupon Kuntz gave the notes proposed to his creditors and turned over to the trustees named, who are the defendants in this action, the 2,250 shares of stock, and the trustees selected two of their number to act as, and they were elected, directors of the corporation. A few weeks after these agreements were executed Kuntz died, and the trustees selected by the creditors to hold the stock referred to

thereupon assumed to, and thereafter did manage and control the business of the corporation until March, 1892. From the testimony given upon the trial it is clear that, almost immediately following Kuntz's death, the defendants Hammerschlag, Schnugg and Shalek, a majority of the trustees, conceived the idea of acquiring for themselves the stock which they held at the lowest possible cost, and to that end they purchased, at about twenty-five cents on a dollar, a majority of the claims of the creditors who had joined in the agreement above referred to. Having acquired a majority of these claims, at the expiration of the two years provided in the agreement with the trustees, the notes given by Kuntz not having been paid in full, they called a meeting of the creditors, of which they themselves were then a majority, and notified them that the stock would be sold at public auction and the proceeds divided in accordance with the agreement under which the same was held. Prior to such meeting they had been advised by counsel that they could not, while acting as trustees, legally acquire by purchase at the sale any of the stock, and to obviate this difficulty it was arranged that one of them, Schnugg, should resign as trustee at the meeting of creditors, which he did. The stock was shortly thereafter advertised for sale in an inconspicuous way, and on the day of sale purchased by Schnugg for the benefit of himself, Hammerschlag and Shalek for ten cents on a dollar, which was much below its market or true value. It was also made to appear on the trial that care was taken by Hammerschlag, Schnugg and Shalek to prevent, prior to the sale, prospective purchasers from acquiring any information as to the real value of the stock to be sold. The proceeds of the sale of the stock were insufficient to pay the claims of creditors, and thereupon this plaintiff, on behalf of himself and all other creditors similarly situated who might see fit to come in, instituted this action for the purpose of procuring a judgment declaring the sale of the stock to be null and void, and requiring the defendants, as trustees under the agreement with Kuntz, to account for the administration of the trust. The plaintiffs had a judgment from which the defendants have appealed.

The sale of the stock, and the purchase of the same by Schnugg, was void. Schnugg was at the time a trustee, and held the stock as such. His attempted resignation amounted to nothing, so far as

discharging him as a trustee or relieving him from the liability imposed on him by the agreement. The only way in which he could legally resign and cease to be a trustee or terminate his liability as such was by an order of the court or by the unanimous consent of all the creditors or other persons interested in the faithful execution of the trust. (*Cruger* v. *Halliday*, 11 Paige, 314.) Being a trustee at the time of the sale, he had a duty to perform in regard to the stock which was inconsistent with his assuming the character of a purchaser. As a trustee it was his duty to sell the stock for as much as possible. As a purchaser he would, naturally, desire to purchase at the lowest price possible. He thus took a position in which his personal interest was brought sharply in conflict with his duty as a trustee, and which the court under no circumstances will permit a person discharging a trust to take. It would, indeed, be a sad commentary upon the exercise of the equitable power of the court if the acts of these trustees would be approved or the sale be permitted to stand. But it is said the plaintiff was guilty of *laches* in instituting the action, and, therefore, the complaint should have been dismissed. We do not think so. It is only in extreme and exceptional cases that the defense of *laches* can be used as a shield to protect unfaithful or dishonest trustees. It cannot be so used in this case.

The conclusion reached by the trial court was, in the main, correct. We are, however, of the opinion that the power conferred upon the receiver to vote upon the stock directed to be delivered to him, as well as the power given to him to manage the business and affairs of the corporation, is too broad, and that he ought not to be permitted to sell the stock until after the defendants have accounted, or a further order of the court has been made. We are also of the opinion that the defendants ought not to be removed as trustees under the agreement of March 11, 1890, until after they have rendered a full account of their acts and doings thereunder. The payment directed to be made by and the subsequent discharge of the receiver is also improper. The directions in this respect can only properly be given after the accounting has been had, when the court will have before it all the facts as to the value of the trust property and the acts and doings of the trustees under the trust agreement.

The judgment, therefore, should be modified as follows:

*First.* By decreeing that the defendants did not cease to be trustees under the agreement of March 11, 1890, by reason of the sale and pretended purchase by Schnugg of the stock in 1892, but that they as such trustees still hold such stock under that agreement for the benefit of the creditors with the duties imposed upon them by that agreement precisely to the same extent and in the same way as though such pretended sale had not been made.

*Second.* By decreeing that the trustees under the agreement of March 11, 1890, account before the referee named in the judgment, for all profits, income and dividends which may have been received by them from the stock placed in their hands, from the date of the agreement down to the time of the accounting.

*Third.* By decreeing that the referee give notice of the time and place of the accounting to all creditors of Joseph Kuntz, deceased, who were parties to the creditors' agreement of March 11, 1890, whose residence can be ascertained, and by publication as directed by the court to those whose residence cannot be ascertained who have not already been paid in full, and that they may, if they so desire, come in and prove their claims in this action; and to report to the court the amount due to each of such creditors who may come in and press his claim.

*Fourth.* By decreeing that the stock delivered to the committee by Kuntz, so far as it is held by the defendants, or any of them, be turned over to the receiver named in the judgment, the same to be held by him to await the final order of the court; and that while he so holds the same to so vote upon it, and to take such action in regard to the management of the affairs of the corporation as he may, from time to time, be directed by the court upon notice to the parties to this action.

*Fifth.* So far as any of such stock may have been disposed of by said defendants since their unlawful purchase thereof and not now held by them, by decreeing that said defendants account for the value of said stock so disposed of, and pay over to said receiver such value in money; the said defendants, however, upon the accounting, to be allowed whatever sums they may have actually paid to the creditors out of the proceeds of the sale of the stock herein held to be unlawful.

All questions of costs and allowances in the court below and of the ultimate disposition of the fund to be reserved until final judgment.

As thus modified, the judgment should be affirmed, with costs of appeal to the respondents. Upon the settlement of the order to be entered hereon either of the parties may submit in writing such suggestions as to the form of the order as they may be advised.

VAN BRUNT, P. J., BARRETT, RUMSEY and INGRAHAM, JJ., concurred.

Judgment modified, as directed in opinion, and affirmed, as modified, with costs of appeal to the respondents.